IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**ERIC SIROTKIN**

**Plaintiff**                    CASE NO

**Vs.**

**SHADY SOFIA ROSE**

**Defendant**

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF FOR BREACH OF CONTRACT, PROMISSORY ESTOPPEL, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

1. Plaintiff is a resident of Santa Fe New Mexico.

2. Defendant is a resident of Ashland Oregon.

3. The contract at issue was drafted and signed in New Mexico and countersigned in Oregon.

4. The jurisdiction in this case is based on diversity under 28 USC 1332 and that the amount in controversy exceeds $75,000.00.

**FACTS COMMON TO ALL COUNTS**

5. The parties have owned a home together since their divorce in 2018.

6. Plaintiff wanted to list the home for sale with a realtor and notified Defendant on March 4, 2022.

7. On or about March 8, 2022, Defendant announced to Plaintiff that she wanted to buy him out of his share as tenant in common in a home at 2026 Ashland Mine Rd that they had up until that time attempted to sell.

8. Defendant represented to Plaintiff that she had a co-signer or private financing.

9. On or about May19, 2022 Defendant told Plaintiff that she was looking at a payout as of June 24th and will try and expedite the funds.

10. On or about June 14, 2022 Defendant told Plaintiff that "Next week a lot of pieces should be coming together."

11. Plaintiff went on to tell Defendant that the refinancing was 99.99% certain.

12. On June 26, 2022 Defendant entered into an oral agreement and a written Purchase Agreement for the property located at 2026 Ashland Mine Rd through the attached Transfer of Ownership Agreement. (Exhibit 1 attached.)

13. In said agreement Defendant bought out the Plaintiff's equity interest in said property for payment of a total of $318,000 and a promise to pay off the loan on said property through refinancing an existing loan that was at that time, including a COVID forbearance amount, $371,905.   .

14. In said agreement Defendant explicitly agreed to cover a Covid forbearance of $22,507.44 which was included in the loan payout above.

15. Defendant did not have the cash to purchase the property so the parties agreed in exchange for selling of Plaintiff's interest in said property to release Plaintiff from:
    a. July 12, 2018 Promissory note for $275,000 and any due interest,
    b. $25,000 owed under a divorce decree between the parties related to a loan to Plaintiff's sons.
    c. Release of Plaintiff's liability in a mortgage on said property held by Rocket Mortgage, including a $22,507 COVID forbearance for a total of $371,905.
    d. A promise by Defendant to privately refinance the loan to remove Plaintiff's name.

16. In reliance on this promise Plaintiff executed a QuitClaim deed to Defendant for his share of the property on June 27, 2022 and gave the original QuitClaim Deed to Defendant. (Exhibit 2 attached.)

17. Said Deed included a clause reiterating the sale terms that read "The true consideration for this conveyance was laid out in a separate agreement of June 25, 2022 wherein Grantee assumes and pays off Rocket Mortgage loan of $371,905, and releases Grantor from personal loan of $275,000 plus all outstanding interest and from a separate balance due her of $25,000 which totals $689,905."

18. Defendant held said QuitClaim deed and then on February 29, 2024 filed said deed with the County Clerk.

19. Defendant kept promising that she had financing and on February 25, 2023, Plaintiff wrote Defendant "I need to get off the loan and it has been a year ago that we withdrew home from market and you wanted to buy it. Did you try and get a traditional mortgage? A year should be long enough to explore all sources. At the time you said you had "private funding" that would help you. I would not have agreed to the sale if it would take a year."

20. Plaintiff added "Please let's set a date to get me off the loan so I can do my financing and if no funding by that date we list the house."

21. Then a week later on March 2, 2024 Defendant writes to Plaintiff confirming that she has bought the house stating "I've already paid you your full half interest in the house. Stop talking about trying to sell this out from under me. It is no longer a joint asset. You stopped paying me interest last June on the loan and I have already paid you your full half interest in this house."

22. On July 31, 2024 in a proceeding related to property payments in the parties' divorce, brought upon a motion by Plaintiff, the court ruled that the property had been sold to Defendant by Plaintiff.

23. In said hearing the Defendant abruptly counter claimed seeking to collect the payments for the $25,000 loan amount, plus interest, and the mortgage forbearance of $22,507, despite having waived those and used those amounts for the purchase price of said property.

24. Defendant is in bad faith seeking double recovery on these amounts and is attempting to renegotiate the agreed upon purchase price to get additional compensation without good cause years later.

25. The Domestic Relations Court awarded those amounts indicating it had no jurisdiction to amend the property division agreement from the divorce, but indicated that a side agreement could be enforceable and found that a sale had taken place.

26. Plaintiff has not been paid this $47,507 toward the purchase of his share in the property as promised by Defendant and Defendant in bad faith sought to recover these waived amounts and interest.

27. Defendant still has not refinanced said property and Plaintiff remains on the loan, despite years of promises that it would be refinanced.

28. Defendant removed Plaintiff from the County Assessor tax rolls on said property after the sale.

29. Said property, according to the Mortgage company, is worth $1,278,000.

30. Said conduct by Defendant was reckless, in bad faith and grossly negligent warranting an award of punitive damages.

## COUNT I – BREACH OF CONTRACT

31. Plaintiff incorporates paragraphs 1-30 above as if fully contained herein.

32. Plaintiff and Defendant entered into an agreement for the purchase of Plaintiff's interest in the property above at a fixed price.

33. The parties agreed to certain credits for amounts owed by Plaintiff to Defendant, but Defendant reneged on the promise to credit Plaintiff $47,507 and instead sought to recover the amount she had waived in writing in a separate court counterclaim.

34. Defendant breached her promise to refinance a loan and pay off the loan with Rocket Mortgage in the amounts contained herein.

35. Said breach has caused damages to Plaintiff.

## COUNT II – PROMISSORY ESTOPPEL

36. Plaintiff incorporates paragraphs 1-35 above as if fully contained herein.

37. Plaintiff gave up his interest in said home in reliance upon the promises of Defendant to transfer ownership, waive certain payments, that she was imminently securing financing to remove Plaintiff from the mortgage, and other actions above.

38. Plaintiff gave up his position to sell said property and share the equity, a substantial change in position, and it was foreseeable by the Defendant that her promises would induce conduct of the kind which occurred.

39. The above oral promises to purchase said home and refinance, coupled with the written Transfer of Ownership Agreement, caused Plaintiff to rely to his detriment and caused him damages.

40. Plaintiff relied on these promises in reducing his equity interest in the home from $371,829 to $318,000, making him entitled to the $53,829 difference between the breached Transfer Agreement and the reasonable share of his equity.

## COUNT III – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

41. Plaintiff incorporates paragraphs 1-40 above as if fully contained herein.

42. The parties had 'a mutual obligation of good faith and fair dealing with respect to their respective roles in accomplishing the transfer of ownership of the house in question.

43. Defendant's effort to double dip and collect amounts promised to have been waived to cover the purchase price of the home was a breach of the duty of good faith and fair dealing to facilitate performance and enforcement of the contract and to complete a conveyance of real property from defendant.

44. Said bad faith efforts caused Plaintiff damages and Plaintiff is entitled to an award of punitive damages.

**WHEREFORE,** Plaintiff seeks a judgment as follows:

1. Compensatory damages.
2. Payment of the $47,507 still due on the sale of home to Defendant.
3. Specific performance of the above contract terms.
4. Payment of $53,829 as the difference between his equity and the agreed upon price.
5. Declaratory judgment that the parties entered into a valid sale agreement for the property and that Plaintiff is entitled to full payment for his relinquishment of his interest in the property in question.
6. Punitive Damages in an amount up to $100,000.00 for bad faith.

7. If the required payment is not received, or Plaintiff is not removed from the mortgage lien with Rocket Mortgage, then a court order sale of said property with the parties sharing in the proceeds.
8. Costs.

Dated: November 19, 2024


Respectfully Submitted

*Eric Sirotkin*

Eric Sirotkin
Plaintiff Pro Se
1330 Bishops Lodge Rd
Santa Fe, NM 87506
541-778-4897
eric@ericsirotkin.com

TERMS OF TRANSFER OF OWNERSHIP
2026 ASHLAND MINE ROAD,
ASHLAND, OREGON

June 25, 2022

Transfer of full ownership to Shady Rose from joint ownership of Eric Sirotkin and Shady Rose:

Eric signs Quitclaim Deed over to Shady Rose, releasing his full one half interest in the home to Shady. Shady has full Title on the house.

Shady covers:

Rocket Mortgage payout $371,905.00 as of June 24, 2022. The figures will be adjusted to the actual amount at closing date.
Shady: pays off the loan to Rocket Mortgage, Including Eric's forbearance loan of $22,000 + any closing costs.

Shady releases the loan to Eric of $275,000, including the outstanding balance of interest, approximately $18,000.
Shady forgives the balance due her of $25,000 named in the Divorce settlement - loan related to Eric's sons.

This is Final Agreement.

Signed:

_Shady Sofia Rose_ *all rights reserved*    Dated: June 27, 2022
Shady Sofia Rose

_Eric David Sirotkin_    Dated: 6/26/22
Eric David Sirotkin



EXHIBIT 1

EXHIBIT

Jackson County Official Records **2024-003993**
R-QCD
Cnt=1 MORGANSS   02/29/2024 02:06:36 PM
$15.00 $10.00 $13.00 $11.00 $60.00   Total:**$109.00**



I, Christine Walker, County Clerk for Jackson County, Oregon, certify that the instrument identified herein was recorded in the Clerk records.
Christine Walker - County Clerk

TAX STATEMENTS
After recording return to:
Shady Sofia Rose
2026 Ashland Mine Rd
Ashland, OR 97520

File No.: 7162-1709608 (ja)
Date: June 27, 2022

Map Tax Lot # 391E06 1101
Tax Account #1-080556-7

---

## QUITCLAIM DEED

Eric David Sirotkin, of 1330 Bishops Lodge Rd Santa Fe NM 87506, Grantor, releases and quitclaims to Shady Sofia Rose, of 2026 Ashland Mine Rd Ashland OR 97520, Grantee, all right, title and interest in and to the following described real property at 2026 Ashland Mine Rd, Ashland OR 97520:

LEGAL DESCRIPTION: Real property in the County of Jackson, State of Oregon, described as follows:

Parcel 2 of Minor Partition Plat recorded september 24,1991 as Partition Plat No. P-91-1991 of the "Record of Partition Plats", Jackson County, Oregon and filed as Survey No. 12661 in the Office of the Jackson County Surveyor. ALSO Beginning at the Northwest corner of Parcel 1 of Minor Partition Plat recorded September 24,1991 as Partition Plat No. P-91-1991 of the "Record of Partition Plats", Jackson County, Oregon, filed as Survey No. 12661 in the Office of the Jackson County Surveyor; thence along the Westerly boundary of said Parcel 1 as follows: South 0° 13' 23" East 165.29 feet; thence South 48° 53' 25" East 236.30 feet to the Northerly right of way of Ashland Mine Road (as located by said Partition Plat); thence along said right of way along the arc of a 120.00 foot radius curve (the long chord bears North 78° 31' 55" East 56.94 feet) 57.49 feet through a central angle of 27027' 01"; thence leaving said right of way North 48° 52' 05" West 245.09 feet; thence North 11° OS' 40" West *60.18* feet; thence North 890 36' 00" East 25.14 feet; thence North 3° 52' 00" West 10.00 feet; thence South 890 36' 00" West 26.42 feet; thence North 90 44' *30"* East 85.19 feet to the North boundary of said Parcell; thence along the North boundary of said Parcell, South 84° 31' 18" West 51.00 feet to the point of beginning. EXCEPTING THEREFROM the following: Beginning at the Northeast corner of Parcell of Minor Partition Plat recorded september 24, 1991 as Partition Plat No. P-91-1991 of the " Record of Partition Plats", Jackson County, Oregon and filed as Survey No. 12661 in the Office of the Jackson County Surveyor; thence along the Easterly boundary of said Parcell, South 00 12' 26" East 403.62 feet to the Northerly right of way of Ashland Mine Road (as located by said Partition Plat); thence along said right of way, South 780 22' 15" East, 25.54 feet to the North-South



EXHIBIT 2

_____
Notary Public

My Commission expires August 16, 2022

SEND TAX STATEMENTS TO GRANTEE at 2026 Ashland Mine Rd Ashland, OR 97520.

2024-003993

centerline of the Southeast Quarter of section 6, Township 39 South, Range 1 East of the Willamette Meridian, Jackson County, Oregon; thence along said centerline North 0° 12' 26" West 411.47 feet; thence South 84°31' 18" West 25.11 feet to the point of beginning.

NOTE: This legal description was created prior to January 1, 2008

The true consideration for this conveyance was laid out in a separate agreement of June 25, 2022 wherein Grantee assumes and pays off Rocket Mortgage loan of $371,905, and releases Grantor from personal loan of $275,000 plus all outstanding interest and from a separate balance due her of $25,000 which totals $689,905.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON☐S RIGHTS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 (Definitions for ORS 92.010 to 92.192) OR 215.010 (Definitions), TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930 (Definitions for ORS 30.930 to 30.947), AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300 (Definitions for ORS 195.300 to 195.336), 195.301 (Legislative findings) AND 195.305 (Compensation for restriction of use of real property due to land use regulation) TO 195.336 (Compensation and Conservation Fund) AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Dated this 27th day of June 2022 by

_____
Eric David Sirotkin

STATE OF NEW MEXICO
NOTARY PUBLIC
ASHLEY GALLEGOS-SANCHEZ
COMMISSION NUMBER 1123006
MY COMMISSION EXPIRES 8/16/2022

State of New Mexico )
County of Bernalillo )

This instrument was acknowledged personally before me on this 27th day of June 2022 by **Eric David Sirotkin.**